IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:14-CR-11-F-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| BRYAN DANIELS | ) | |

This matter is before the court on the following pretrial motions filed by Defendant Bryan Daniels ("Daniels"): (1) Motion to Dismiss Counts 1, 2, and 4 of the Indictment [DE-28]; (2) Request for Notice of Intent to Use Rule 404(b) Evidence [DE-29]; (3) Motion to Sequester Government Witnesses [DE-30]; (4) Motion for Early Disclosure of *Brady/Giglio* Material [DE-31]; and (5) Motion for Disclosure of Government Summary Exhibits [DE-32]. The issues have been fully briefed and are now ripe for ruling. For the following reasons, Daniels's Motion to Dismiss Counts 1, 2, and 4 of the Indictment [DE-29] is ALLOWED. Daniels's Request for Notice of Intent to Use Rule 404(b) Evidence is DENIED as moot; Daniels's Motion to Sequester Government Witnesses is ALLOWED; Daniels's Motion for Early Disclosure of *Brady/Giglio* Material is DENIED as moot; Daniels's Motion for Disclosure of Government Summary Exhibits is ALLOWED.

I. **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Daniels, a commercial fisherman, has held a federal vessel operator permit from the National Oceanic and Atmospheric Administration ("NOAA") since 1996. In 2009, Daniels was the captain of the *Joyce D*, a commercial stern trawler fishing vessel.

---

[1] The court's factual recitation comes from the parties' representations contained in Daniels's Motion to Dismiss Indictment [DE-28] and the Government's Opposition [DE-37].

Consistent with the recommendations of the Interstate Fishery Management Plan, North Carolina authorizes commercial fishing for striped bass during specific seasons, but only within its boundaries: inland and ocean waters from zero to three nautical miles from shore. During a January 27-28, 2009 fishing trip, Daniels landed 1,086 pounds of striped bass that he sold to a seafood dealer. Daniels did not obtain any other species of fish from the trip. The vessel monitoring system ("VMS") tracking data reveals that Daniels's trip took place completely in the Exclusive Economic Zone ("EEZ"),[2] which was in violation of federal law.[3]

On February 9, 2009, Daniels completed another fishing trip, landing 2,159 pounds of striped sea bass, which he sold to a fish dealer. VMS tracking data shows that the *Joyce D* was operating approximately 6.5 nautical miles from shore, which falls within the EEZ.

On February 1-2, 2009, Daniels completed another fishing trip and landed another 5,158 pounds of sea bass, which he sold to a fish dealer. Daniels signed three separate FVTRs declaring he made three separate fishing trips on February 1-2, 2010. The VMS track data from February 1 indicated the *Joyce D* was operating approximately 8.8 nautical miles off shore, which falls within the EEZ. The data from February 2 indicated that *Joyce D* was in inland waters where it is not possible to trawl for striped bass. The government contends all 5,158 pounds were caught during the February 1 trip.

---

[2] The EEZ along the United States Atlantic coast is that area from three nautical miles from shore out to 200 nautical miles from shore.

[3] The NOAA implemented regulations requiring commercial fishing vessels targeting specific fisheries to carry a VMS. A VMS is a hardware/software system that is installed on a vessel to transmit position data and send and receive other data communications. VMS systems operate off of Global Positioning System satellite infrastructure.

2

Daniels was named in a four-count indictment on January 15, 2014. *See* Indictment [DE-1]. In Counts One, Two, and Four, Daniels is charged with Lacey Act Trafficking, in violation of 16 U.S.C. §§ 3372(a)(1) and 3373(d)(1)(B); 50 C.F.R. §§ 697.7(b)(1), (2), (3) and (4).

Daniels filed the instant five pretrial motions on April 30, 2015. On May 28, 2015, the Government filed its Opposition to Defendant's Motion to Dismiss [DE-37], a Response to Defendant's Motion to Sequester Government Witnesses [DE-36], and a Response to Defendant's Pretrial Motions [DE-35]. Daniels is scheduled for arraignment and trial at the court's August 3, 2015 term of court.

## II. DISCUSSION

### A. Motion to Dismiss Counts 1, 2, and 4 of the Indictment

Daniels asserts two bases upon which dismissal is warranted. First, he argues that the facts of the Indictment as alleged cannot constitute a violation of the Lacey Act as a matter of law. Second, he argues that the applicable statutes relating to the Indictment charge are unconstitutionally vague and overbroad.[1]

#### i. Legal Standard

The Supreme Court of the United States has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). An indictment must allow the court to determine whether the alleged facts, if proven, are sufficient to support a conviction. *See Russell v. United States*, 369 U.S. 749, 768-69 (1962). In

---

[1] As outlined below, the court finds that the Indictment improperly charges Defendant Daniels. Therefore, the court does not address the question of whether any of the statutes and regulations involved in this matter are unconstitutionally vague or overbroad. However, the court does note that, even if none of the statutes are unconstitutionally vague or overbroad, the interrelation of the statutes is an overwrought mess.

3

order for the court to dismiss an indictment, the defendant must show that "the allegations therein, even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004); *see also United States v. Bowling*, No. 7:14-CR-98-D, 2015 WL 3541475, at *3 (E.D.N.C. May 26, 2015) ("It is perfectly proper, and in fact mandated, that the district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense."). In ruling on a motion to dismiss an indictment for failure to state an offense, district courts are limited to reviewing the language used in the indictment, *see United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006), and must accept as true the allegations contained therein, *see United States v. Farmer*, 370 F.3d 435, 440 (4th Cir. 2004).

### ii. The Lacey Act provides an exception for activities regulated by a fishery management plan passed under the Magnuson-Stevens Act.

This case involves the intersection of three Acts, all of which deal with the regulation of fishing activities: (1) the Lacey Act, (2) the Magnuson-Stevens Act, and (3) the Atlantic Striped Bass Conservation Act (the "ASBCA"). The Indictment charges Daniels with two violations of the Lacey Act under 16 U.S.C. § 3372(a)(1), which makes it unlawful to "import, export, transport, sell, receive, acquire, or purchase any fish or wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States or in violation of any Indian tribal law." The law Daniels is alleged to have violated is found in 50 C.F.R. § 697.7(b), which prohibits fishing activities for Atlantic striped bass in the EEZ. Section 697.7(b) is issued, in part, under the authority of the ASBCA. *See* 50 C.F.R. § 697.1. Furthermore, section 697.7(b) incorporates the prohibitions set forth in 50 C.F.R. § 600.725, which is part of the Magnuson-Stevens Act regulations.

The Lacey Act also contains an exception to its enforcement, specifically for "any activity regulated by a fishery management plan in effect under the [Magnuson-Stevens Act]."

4

*See* 16 U.S.C. § 3377(a). Thus, if a fishery management plan ("FMP") under the Magnuson-Stevens Act regulates an activity, the Lacey Act provisions do not apply to that activity.

### iii. The defendant's conduct is regulated by the ASBCA FMP, which is treated as an FMP issued under the Magnuson Stevens Act.

The ASBCA regulates fishing activities for Atlantic striped bass. The Act states, in part, that "[t]he Secretary shall promulgate regulations governing fishing for Atlantic striped bass in the [EEZ] that the Secretary determines (1) are consistent with . . . section 301 of [the Magnuson-Stevens Act]," among other requirements. 16 U.S.C. § 5158(a). The ASBCA also has a provision stating that the enforcement provisions of the Magnuson-Stevens act "shall apply with respect to regulations and any plan issued under subsection (a) of this section *as if* such regulations or plan were issued under the Magnuson[-Stevens] Act." *Id.* § 5158(c) (emphasis added). That is, any regulation or plan that is (1) passed under the ASBCA and (2) to which the Magnuson-Stevens Act applies, is to be treated by the Magnuson-Stevens Act as though it were issued under the that Act. The Magnuson-Stevens Act prohibits "fishing . . . within the [EEZ] . . . unless such fishing is authorized by, and conducted in accordance with, a valid and applicable permit . . . ." *Id.* § 1857(2)(B). That statute covers the activities prohibited by the ASBCA. *See id.* § 5158(c). Therefore, if an FMP is passed under the ASBCA, it is treated as an FMP by, and as if issued under, the Magnuson-Stevens Act, and the Lacey Act would except it from the prohibition contained in 16 U.S.C. § 3372(a)(1). *See id.* § 3377(a).

Under the ASBCA, a "Plan" is defined as "a plan for managing Atlantic striped bass, or an amendment to such plan, that is prepared and adopted by the Commission." 16 U.S.C. § 5152(10). The Commission has passed a Plan, called the Atlantic Striped Bass Interstate Fishery Management Plan (the "ASBCA FMP"). *See, e.g.*, Atlantic States Marine Fisheries Commission, Addendum IV to Amendment 6 to the Atlantic Striped Bass Interstate Fishery Management Plan

5

(approved October 2014);[2] Atlantic States Marine Fisheries Commission, Fisheries Management Report No. 1: Interstate Fisheries Management Plan for the Striped Bass (October 1981).[3] That plan is an FMP, and because of 16 U.S.C. § 5158, must be considered an FMP by and under the Magnuson-Stevens Act.

The ASBCA FMP authorizes the Secretary of Commerce to regulate striped bass in the EEZ. *See, e.g.*, Atlantic States Marine Fisheries Commission, Fishery Management Report No. 41: Amendment 6 to the Interstate Fishery Management Plan for Atlantic Striped Bass, § 4.8.8.1 (February 2003).[4] The Secretary of Commerce, in turn, has passed a regulation on Atlantic striped bass prohibiting fishing for Atlantic striped bass in the EEZ—the same regulation under which the defendant is being prosecuted. *See* 50 C.F.R. § 697.7(b). To be clear, section 697.7(b) regulates an activity under the authority of the ASBCA FMP. Because the ASBCA FMP is to be treated as an FMP by, and as if issued under, the Magnuson-Stevens Act, the Lacey Act exception therefore applies to section 697.7(b) as an "activity regulated by a fishery management plan in effect under the [Magnuson-Stevens Act]." *See* 16 U.S.C. § 3377(a).

### iv. The government's arguments are incorrect or inapposite to the present case.

The government argues (1) that there is no FMP regulating Atlantic striped bass fishing, but instead that the Secretary of Commerce has imposed a blanket moratorium on all Atlantic striped bass fishing; and (2) that the "as if" language of 16 U.S.C. § 5158(c) distinguishes any plans or regulations under the ASBCA as *not* being passed under the Magnuson-Stevens Act. The court disagrees.

---

[2] *Available at* http://www.asmfc.org/uploads/file/ 54d2aa96AtlStripedBassAddendumIV_Oct2014.pdf.
[3] *Available at* http://www.asmfc.org/uploads/file/1981FMP.pdf.
[4] *Available at* http://www.asmfc.org/uploads/file/sbAmendment6.pdf.

6

First, as outlined above, an FMP does exist for Atlantic striped bass fishing—the ASBCA FMP. The Secretary of Commerce passed regulations, including the moratorium, as authorized by the ASBCA FMP. Simply because those regulations impose a moratorium does not mean that there is no FMP.

Second, in interpreting section 5158(c), this court will "first and foremost strive to implement congressional intent by examining the plain language of the statute." *United States v. Passaro*, 577 F.3d 207, 213 (4th Cir. 2009). Unless a statute is ambiguous or there is a clear legislative intent contradicting the statutory language, courts must give the statute its "plain meaning." *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010). To give a statute's words their plain meaning is to "give the terms their ordinary, contemporary, common meaning." *Id.* (quoting *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009)).

The plain language of section 5158(c) states that, if a regulation or plan is passed under the ASBCA—which would include a regulation or plan issued by the Secretary of Commerce regarding the fishing of Atlantic striped bass in the EEZ—then that regulation or plan must be treated by the Magnuson-Stevens Act as if it had been passed under the Magnuson-Stevens Act. While the statute has not previously been interpreted, the court sees no other way to read the statute. Furthermore, the court has thoroughly reviewed the legislative history of the ASBCA and can find no contradictory intent. Instead, it is the government's proposed interpretation of section 5158(c) that directly contradicts the plain language of the statute.

The government cites several cases in support of its position that the Lacey Act exception, 16 U.S.C. § 3377(a), does not apply to the ASBCA FMP. *See, e.g., United States v. Ertsgaard*, 222 F.3d 615, 616-17 (9th Cir. 2000) (holding that the relevant regulations were promulgated under "the Halibut Act, not the Magnuson-Stevens Act"); *United States v.*

7

*Doubleday*, 804 F.2d 1091, 1095 n.5 (9th Cir. 1986) (holding the same). Those cases, which involve application of the Halibut Act, are inapposite. Unlike the ASBCA, the Halibut Act contains no "as if" provision that treats all plans or regulations passed under the Halibut Act as if they had been issued under the Magnuson Act. That issue alone sufficiently distinguishes the Halibut Act cases from the present case. Additionally, the *Doubleday* court noted that the Halibut Act did not have an enforcement mechanism independent of the Lacey Act. *See* 804 F.2d at 1095 n.5. Indeed, the court stated that "[t]he Magnuson Act could not enforce the International Pacific Halibut Commission's regulations because those regulations are not part of the Gulf of Alaska Plan." *Id.* However, in the present case, just the opposite is true. Section 5158(c) explicitly states that the Magnuson-Stevens Act enforcement provisions apply to all plans and regulations passed under the ASBCA as if those plans and regulations were issued under the Magnuson-Stevens Act. The government's argument to the contrary is simply incorrect.

The Fourth Circuit has held that "[w]here one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute." *United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009) (quoting *Hassett v. Welch*, 303 U.S. 303, 314 (1938)). While section 5158 does not adopt the Magnuson-Stevens Act, its plain meaning indicates an intent to treat ASBCA-issued plans and regulations, where the Magnuson-Stevens Act applies to those plans and regulations, as if they were part of the Magnuson-Stevens Act.

Because the Lacey Act exception of 16 U.S.C. § 3377(a) applies to 50 C.F.R. § 697.7(b) and to activities regulated by the ASBCA FMP, Daniels was improperly charged under 16

U.S.C. § 3372(a)(1). Therefore, Daniels's Motion to Dismiss Counts 1, 2, and 4 of the Indictment [DE-24] is ALLOWED and those counts are DISMISSED.

### B. Request for Notice of Intent to Use Rule 404(b) Evidence

In his Request for Notice of Intent to Use Rule 404(b) Evidence, Daniels requests that the Government disclose the substance of any evidence it intends to introduce against Daniels pursuant to Rule 404(b) of the Federal Rules of Evidence so that he may, if appropriate, move to suppress such evidence. Req. Notice of Intent [DE-29] at 1.

Rule 404(b) requires that the prosecution, upon request by the defendant, "provide reasonable notice of the general nature of any [Rule 404(b)] evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b). The rule does not, however, entitle the defendant to the discovery of the 404(b) evidence itself. *See United States v. Graham*, 468 F. Supp. 2d 800, 802 (E.D.N.C. 2006) (explaining Rule 404(b) does not require the government to identify "the tangible evidence upon which [it] may rely to introduce the Rule 404(b) evidence").

The Government notes that it is aware of its duty to provide a defendant reasonable notice, in advance of trial, of the general nature of any evidence offered pursuant to Rule 404(b). Resp. to Pretrial Mot. [DE-35] at 1. Further, the Government represents that it intends to disclose the nature of any known evidence it intends to present at trial under Rule 404(b) within a reasonable time, but it any event, no later than one week before the commencement of trial. Because the court agrees with the Government that notice one week before trial is sufficient, Daniels's Request for Notice of Intent to Use Rule 404(b) Evidence [DE-29] is DENIED as moot.

9

### C. Motion to Sequester Government Witnesses

In his Motion to Sequester Government Witnesses, Daniels moves for an order sequestering all witnesses the Government intends to call during trial. Mot. to Seq. Wit. [DE-30] at 1. Daniels acknowledges that it is well-established that the Government may exempt its investigating agent from sequestration pursuant to Federal Rule of Evidence 615(b). *Id.*

Rule 615 of the Federal Rules of Evidence addresses sequestration and provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Fed. R. Evid. 615. Sequestration of witnesses is mandatory if requested under Rule 615. *United States v. Farnham*, 791 F.2d 331, 335 (4th Cir. 1986). Each witness is prohibited from discussing previous trial testimony with any other witness who has yet to testify at trial. *United States v. Rhynes*, 218 F.3d 310, 317 (4th Cir. 2000) ("Sequestration requires that witnesses not discuss the case among themselves or anyone else, other than the counsel for the parties.") (citation omitted). Rule 615 excludes from the sequestration requirement "an officer or employee of a party which is not a natural person designated as its representative by its attorney." Fed. R. Evid. 615(b). A government investigative agent involved in the criminal prosecution falls within this exception. *United States v. Parodi*, 703 F.2d 768, 773 (4th Cir. 1983). Only one agent is exempt from sequestration under this exception. *Farnham*, 791 F.2d at 335.

The Government joins in Daniels's Motion to Sequester Government Witnesses and represents that it will take appropriate steps to sequester Government witnesses during the course of the trial and will prevent Government witnesses from being exposed to testimony given at trial. Resp. Mot. to Seq. Wit. [DE-36] at 1. Citing *Opus 2 Ltd. v. Heritage Park, Inc.*, 91 F.3d 625, 629 (4th Cir. 1996), the Government argues that because Rule 615 is designed to preclude

fact witnesses from shaping their testimony based on the testimony provided by other witnesses, it does not mandate the sequestration of expert witnesses who are to give only an expert opinion at trial. *Id.* The Government moves to request an exemption for the presence of both sides' expert witnesses at trial pursuant to Rule 615(c). *Id.*

Sequestration does not apply to "a person whose presence a party shows to be essential to presenting the party's claim or defense." Fed. R. Evid. 615(c). In *Opus 2 Ltd.*, the Fourth Circuit noted that although Rule 615 is designed to preclude fact witnesses from shaping their testimony based on the testimony of other witnesses, the rule does not mandate sequestration of expert witnesses who are only giving expert opinions at trial. 91 F.3d at 629. The court declined to adopt a *per se* rule exempting expert witnesses from sequestration, even those witnesses expected to render only opinions. *Id.* Further, the court held that Rule 615 does not provide for such an exemption and section (c) affords trial judges broad discretion for determining whether a witness is "essential." *Id.*

In this case, Daniels's Motion to Sequester Government Witnesses [DE-30] is ALLOWED. All witnesses the Government intends to call during trial will be sequestered, with the exception of the Government's one case agent pursuant to Rule 615(b). As for the Government's request that both sides' expert witnesses be exempted from sequestration, this request is DENIED without prejudice to renew at the start of the trial.

### D. Motion for Early Disclosure of *Brady/Giglio* Material

In his Motion for Early Disclosure of *Brady/Giglio* Material, Daniels moves for an order requiring the Government to immediately, or not less than sixty days prior to trial, disclose all *Brady/Giglio* material in its possession pursuant to Rule 16 of the Federal Rules of Criminal Procedure and the principles set forth in *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United*

11

*States*, 405 U.S. 150 (1972), and *Kyles v. Whitley*, 514 U.S. 419 (1995). Mot. Discl. of *Brady* Mat. [DE-31] at 1.

Pursuant to *Brady* and its progeny, the Government is required to disclose evidence that is "both favorable to an accused and 'material to either guilt or punishment.'" *United States v. Bagley*, 473 U.S. 667, 674 (1985); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This requirement includes the disclosure of evidence that could potentially be used to impeach or discredit a government witness. *Giglio v. United States*, 405 U.S. 150, 154 (1972).

The Government acknowledges its obligations under *Brady*, *Giglio*, and their progeny. Resp. to Pretrial Mot. [DE-35] at 2. According to the Government, it has produced over 30,000 documents in discovery, including grand jury transcripts, witness statements, and search warrant affidavits. *Id.* at 3. Also, the Government has provided three supplemental discovery productions as additional materials became available. *Id.* The Government agrees to continue to comply with its discovery obligations under *Brady* and *Giglio*. *Id.* Moreover, the Government notes that copies of criminal histories, plea agreements, promises of consideration or inconsistent statements, if any, for testifying witnesses, and any other impeaching materials not previously furnished will be furnished to Daniels in time to put the information to effective use at trial. *Id.*

Because the Government has acknowledged its obligations under *Brady*, *Giglio*, and their progeny and has agreed to comply with its ongoing discovery obligations, Daniels's Motion for Early Disclosure of *Brady/Giglio* Material [DE-31] will be DENIED as moot. The Government is ordered to continue its ongoing practice of producing *Brady/Giglio* material. *See United States v. Cuong Gia Le*, 306 F. Supp. 2d 589, 593 n.5 (E.D. Va. 2004) (concluding that "exculpatory evidence must be produced on a prompt, ongoing basis").

12

Case 4:14-cr-00011-BO Document 38 Filed 07/24/15 Page 12 of 14

### E. Motion for Disclosure of Government Summary Exhibits

In his Motion for Disclosure of Government Summary Exhibits, Daniels requests an order requiring the Government to produce any summary exhibit it intends to use at the trial of this case at least ten days prior to trial. Mot. Discl. Summ. Ex. [DE-32] at 1. Daniels makes his request for two reasons: (1) ten days prior to trial is necessary to review the summary exhibit, compare it to the hard data, and check its accuracy and completeness compared to the evidence; and (2) ten days is needed to review the Government's summaries and determine if there is a need to obtain expert or lay witnesses to explain or rebut the Government's summary, or to create a competing summary that better explains the underlying evidence. *Id.* at 2.

The admission of charts or summaries is expressly permitted under Federal Rule of Evidence 1006, which provides:

> The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.

Fed. R. Evid. 1006. The purpose of Rule 1006 is to reduce the volume of written documents that are introduced into evidence and to allow accurate derivatives from the voluminous documents. *United States v. Janati,* 374 F.3d 263, 272 (4th Cir. 2004).

The Government does not object to Daniels's request for disclosure of summary exhibits, and it intends to disclose any summary exhibits in compliance with Rule 1006. Resp. to Pretrial Mot. [DE-35] at 4. However, the Government believes that disclosure one week prior to trial would be reasonable in this case. *Id.* The Government requests that Daniels provide any summary exhibits he intends to introduce at trial within the same time frame.

In this case, the court believes that disclosure of summary exhibits ten days prior to trial constitutes a "reasonable time" under Rule 1006. Consequently, Daniels's Motion for Disclosure of Government Summary Exhibits [DE-32] is ALLOWED. Both the Government and Daniels shall disclose any summary exhibits they intend to admit during the trial at least ten days prior to trial.

### III. CONCLUSION

For the foregoing reasons, Daniels's Motion to Dismiss Counts 1, 2, and 4 of the Indictment [DE-28] is ALLOWED. Those counts are DISMISSED. Daniels's Motion for Evidence under Rule 404(b) [DE-29] is DENIED as moot. Daniels's Motion to Sequester Witnesses [DE-30] is ALLOWED. Daniels's Motion for Early Release of Brady Materials [DE-31] is DENIED as moot. Daniels's Motion for Disclosure of Summary Exhibits [DE-32] is ALLOWED. The Clerk of Court is DIRECTED to continue management of this case.

SO ORDERED.

This, the 2**y**'day of July, 2015.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge